UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PATRICK NEWELL,<br><br>                Petitioner,<br>v.<br><br>ISIDRO BACA, *et al.*,<br><br>                Respondents. | Case No. 3:16-cv-00662-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

*Pro se* Petitioner Patrick Newell filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (ECF No. 6.) This matter is before the Court for adjudication of the merits of the Petition. For the reasons discussed below, the Court denies the Petition, denies a certificate of appealability, and directs the Clerk of the Court to enter judgment accordingly.

**II.    BACKGROUND**

Newell's convictions are the result of events that occurred in Clark County, Nevada on or about October 10, 2012. (ECF No. 20-10 at 2.) In its opinion affirming Newell's convictions, the Nevada Supreme Court described the crime, as revealed by the evidence at Newell's trial, as follows:

> In 2012, appellant Patrick Newell sprayed Theodore Bejarano with gasoline and lit Bejarano on fire during an altercation at a gas station. Newell also threatened Bejarano with a small pocket knife, although Bejarano could not later recall this incident. . . . [a]t trial, Newell claimed that his actions were a justifiable battery because he reasonably believed that Bejarano was committing felony coercion against him at the time of the incident.

(ECF No. 23-6 at 3.)

On June 19, 2014, a jury convicted Newell of battery with the use of a deadly

1  weapon resulting in substantial bodily harm (Count 2), attempted assault with a deadly
2  weapon (Count 3), and performance of an act in reckless disregard of persons or
3  property resulting in substantial bodily harm (Count 4). (ECF No. 21-3 at 3.) The jury
4  found Newell not guilty of attempted murder with the use of a deadly weapon (Count 1).
5  (*Id.* at 2.) The state district court sentenced Newell to 72 to 180 months for Count 2 and
6  24 to 60 months for Count 3, to run concurrent with Count 2. (ECF No. 22-6 at 3.) Count
7  4 was dismissed. (*Id.*)

8  Newell appealed, and the Nevada Supreme Court affirmed. (ECF No. 23-6.)
9  Newell petitioned for rehearing. (ECF No. 23-9.) The Nevada Supreme Court denied the
10 petition without explanation. (ECF No. 23-10.) Remittitur issued on February 26, 2016.
11 (ECF No. 23-13.)

12 On August 3, 2015, Newell filed a state habeas petition challenging the
13 computation of his good-time credits. (ECF No. 23-3.) The state district court denied the
14 petition on March 3, 2016. (ECF No. 23-12.) The Nevada Court of Appeals affirmed the
15 denial of the petition on December 14, 2016. (ECF No. 23-17.) Remittitur issued on
16 January 11, 2017. (ECF No. 23-18.)

17 Newell's federal habeas petition was filed on January 6, 2017. (ECF No. 6.)
18 Respondents moved to dismiss the petition on November 14, 2017. (ECF No. 18.) This
19 Court denied the motion on July 31, 2018. (ECF No. 32.)

20 Respondents answered Newell's petition on March 28, 2019. (ECF No. 42.) Newell
21 replied on July 15, 2019. (ECF No. 55.) Thereafter, Newell requested an evidentiary
22 hearing, that the matter be placed on calendar, and that the case be submitted for a
23 decision. (ECF Nos. 56, 59, 60.) This Court denied Newell's motions. (ECF No. 61 at 3.)

24 Newell asserts the following violations of his federal constitutional rights: (1) the
25 state district court's retroactive application of new limitations on the use of deadly force
26 violated ex post facto principles and deprived him of a defense that would otherwise have
27 been available to him when he committed his crime; and (2) the state district court's
28 creation of new limitations on the use of deadly force and ex post facto application of these

limitations violated his Fourteenth Amendment due process rights. (ECF No. 6 at 3–5.)

In its order denying Respondents' motion to dismiss, this Court explained that it viewed Newell's two grounds as actually setting forth a single claim—that the state district court's retroactive application of new limitations on the use of deadly force violated ex post facto principles and deprived Newell of a defense that would otherwise have been available to him when he committed his crime in violation of his Fourteenth Amendment due process rights. (ECF No. 32 at 4.)

It appears that Newell was granted parole on or about May 9, 2019.

### III. LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing

3

1 legal principle from [the Supreme] Court's decisions but unreasonably applies that
2 principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).
3 "The 'unreasonable application' clause requires the state court decision to be more than
4 incorrect or erroneous. The state court's application of clearly established law must be
5 objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation
6 omitted).

7 The Supreme Court has instructed that "[a] state court's determination that a claim
8 lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'
9 on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101
10 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court
11 has stated "that even a strong case for relief does not mean the state court's contrary
12 conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen*
13 *v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet"
14 and "highly deferential standard for evaluating state-court rulings, which demands that
15 state-court decisions be given the benefit of the doubt" (internal quotation marks and
16 citations omitted)).

## IV. DISCUSSION

18 Newell argues that the state district court retroactively applied new limitations on
19 the use of deadly force in violation of ex post facto principles and deprived him of a
20 defense that would otherwise have been available to him when he committed his crime
21 in violation of his Fourteenth Amendment right to due process. (ECF No. 6 at 3–5.)
22 Respondents counter that the state district court's interpretation of NRS § 200.160 was
23 expected and defensible. (ECF No. 42 at 7.)

24 At trial, "Newell's theory was that he was legally entitled to use deadly force to
25 protect himself from a felony coercion" because the victim "was attempting to coerce Mr.
26 Newell into giving him a ride." (ECF Nos. 6 at 10; 22-2 at 13.) In line with that theory,
27 Newell proposed a justifiable battery jury instruction based on *Davis v. State*, 321 P.3d
28 867 (Nev. 2014), which was decided by the Nevada Supreme Court approximately three

4

months before Newell's trial. (ECF No. 22-2 at 12–14.) Newell's proposed jury instruction provided that:

> Justifiable battery is the battery of a human being when there is reasonable ground to apprehend a design on the part of the person battered to commit a felony and there is [imminent] danger of such a design being accomplished. This is true even if deadly force is used. . . .

(ECF No. 23-6.)

Following discussion of Newell's proposed jury instruction (*see* ECF No. 22-2 at 12–17), the jury was instructed: "Justifiable battery is the battery of a human being, which does not result in death and is necessary for self-defense, when there is reasonable ground to apprehend a design on the part of the person injured to do some great personal injury to the person inflicting the injury." (ECF No. 22-1 at 36.) The jury was also instructed, over Newell's objection to the italicized sentences that were added by the state district court, that:

> Justifiable battery is the battery of a human being when there is reasonable ground to apprehend a design on the part of the person battered to commit a felony and there is immeninent [sic] danger of such a design being accomplished. This is true even if deadly force is used. *The amount of force used to effectuate the battery must be reasonable and necessary under the circumstances. Deadly force cannot be used unless the person battered poses a threat of serious bodily injury.*
>
> The felony that the Defendant alleges occurred was the crime of Coercion, which is defined as follows:
>
> > It is unlawful for a person to use the immediate threat of physical force, with the intent to compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing, to:
> >
> > (a) Use violence or inflict injury upon the other person or any of the other person's family, or upon the other person's property, or threaten such violence or injury;
> > (b) Deprive the person of any tool, implement or clothing, or hinder the person in the use thereof.
> > (c) Attempt to intimidate the person by threats or force.

(*Id.* at 39.)

The state district court explained that it was "comfortable" changing Newell's

5

proposed jury instruction "because that . . . seems like it's what the Legislature and *Weddell*[1] intended, granted it may not be what *Davis* intended[,] although *Davis* and *Weddell* [are] two cases that are not saying the same thing." (ECF No. 22-2 at 17.)

On direct appeal, Newell argued that the state district court unreasonably restricted his right to present a justifiable battery defense when it added specific restrictions beyond those found in NRS § 200.160. (ECF No. 22-9 at 9.) The Nevada Supreme Court explained that while a plain reading of NRS § 200.160 and NRS § 200.275 would appear to "justify any battery committed in reasonable apprehension of *any* felony or in resistance of an attempt to commit *any* felony, regardless of the amount of force used or whether the person battered poses a threat of serious bodily injury," this "interpretation is unreasonable and absurd." (ECF No. 23-6 at 6 (emphases in original).) Therefore, the Nevada Supreme Court, considering its holding in *Weddell* and the United States Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1 (1985), explained:

> [W]e extend our holding in *Weddell* to NRS 200.160 and require that in order for homicide in response to the commission of a felony to be justifiable under that statute, the amount of force used must be reasonable and necessary under the circumstances. Furthermore, deadly force cannot be used unless the person killed poses a threat of serious bodily injury to the slayer or others. By extension, the amount of force used in a battery must also be reasonable and necessary in order to be justified, and deadly force cannot be used unless the person battered poses a threat of serious bodily injury to the slayer or others. Because the district court correctly included these requirements in its justifiable battery jury instruction, we hold that it did not abuse its discretion.

(*Id.* at 9.)

In his petition for rehearing, Newell argued that the Nevada Supreme Court's decision on direct appeal "overlooked or misapprehended a material question of law in that it failed to consider the Ex Post Facto implications of retroactively applying the newly created limitations on the use of deadly force to Newell." (ECF No. 23-9 at 7.) The Nevada Supreme Court denied the petition without explanation. (ECF No. 23-10 at 2.)

Because Newell's federal constitutional violation arguments were denied on the

---

[1]*State v. Weddell*, 43 P.3d 987 (Nev. 2002).

6

merits without explanation by the Nevada Supreme Court in its order denying his petition for rehearing, this Court "determine[s] what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Harrington*, 562 U.S. at 102.

The Constitution's Ex Post Facto Clause provides that "[n]o State shall . . . pass any . . . ex post facto [l]aw." Art. I, § 10, cl. 1; *see also* Art. I, § 9, cl. 3 ("No . . . ex post facto [l]aw shall be passed."). The Ex Post Facto Clauses "forbids the Congress and the State to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (internal quotation marks omitted). "As the text of the Clause makes clear, it 'is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.'" *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting *Marks v. United States*, 430 U.S. 188, 191 (1977)). Thus, because Newell alleges a violation by the state district court and Nevada Supreme Court, not the Nevada Legislature, and because the United States Supreme Court has made it clear that "[t]he Ex Post Facto Clause, by its own terms, does not apply to courts," *id.* at 460, to the extent Newell makes an Ex Post Facto Clause violation argument, such an argument is legally untenable.

However, turning to Newell's due process argument, the United State Supreme Court has observed that the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* at 456, 460 (explaining that "the Due Process and Ex Post Facto Clauses safeguard common interests-in particular, the interests of fundamental fairness (through notice and fair warning) and the prevention of the arbitrary and vindictive use of the laws"). Because "a criminal statute must give fair warning of the conduct that it makes a crime," the judicial construction of a criminal statute "must not be given retroactive effect" if that judicial construction "is unexpected and indefensible by

7

reference to the law which had been expressed prior to the conduct in issue." *Bouie v. City of Columbia*, 378 U.S. 347, 350, 354 (1964) (internal quotation marks omitted) (determining that the South Carolina court's construction of a statute was unexpected and indefensible because it was at odds with the statute's plain language and had no support in prior South Carolina decisions); *see also United States v. Lanier*, 520 U.S. 259, 266 (1997) (stating that "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope"); *Webster v. Woodford*, 369 F.3d 1062, 1069 (9th Cir. 2004) ("The touchstone of the *Bouie* doctrine is that due process protects against judicial infringement of the right to fair warning that certain conduct will give rise to criminal penalties."). Accordingly, "[w]hen a[n] . . . unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *Bouie*, 378 U.S. at 354–55.

Newell argues that the state district court and Nevada Supreme Court's extension of *Weddell* to NRS § 200.160, which prohibited him from presenting this theory that he was entitled to use deadly force to protect himself from felony coercion, was unforeseeable and violated his due process rights given the common law in place when NRS § 200.160 was adopted, the plain reading of NRS § 200.160, and the Nevada Supreme Court's comments in *Davis*. (ECF No. 6 at 12.) This Court disagrees.

Under Nevada law, "[i]n addition to any other circumstances recognized as justification at common law, the infliction or threat of bodily injury is justifiable, and does not constitute mayhem, battery or assault, if done under circumstances which would justify homicide." NRS § 200.275. Relevantly, pursuant to NRS § 200.160 as it appeared at the time of Newell's crime and trial, homicide was justifiable when committed "[i]n the lawful defense of the slayer . . . where there is reasonable ground to apprehend a design on the part of the person slain to commit a felony" or "[i]n the actual resistance of an attempt to commit a felony upon the slayer."

8

Approximately ten years prior to Newell's crime, in *State v. Weddell*, the Nevada Supreme was "asked to determine whether a private person may use deadly force in making what is commonly referred to as a citizen's arrest." *Weddell*, 43 P.3d at 988. The Nevada Supreme Court "h[e]ld that a private person, when arresting another person . . . may use no more force than is necessary and reasonable to secure the arrest" and that "deadly force is, as a matter of law, unreasonable, unless the deadly force is used in defense of self or others against a threat of serious bodily injury." *Id.* at 988. In coming to this conclusion, the Nevada Supreme Court explained that "[a]t common law, the fleeing-felon rule permitted a private person to use deadly force to apprehend a felon" and that this "rule was adopted at a time when felonies were only the very serious, violent or dangerous crimes and virtually all felonies were punishable by death." *Id.* at 990. However, today "many crimes which are punished as felonies do not involve dangerous conduct or violence and are not punishable by death," and as such, "[t]he modern arbitrary and expanded classification of crimes as felonies has undermined the rationale for the old common law fleeing-felon rule." *Id.* at 990. In addition to distancing itself from the common law, the Nevada Supreme Court also explained that the Nevada legislature repealed NRS § 200.160(3)[2] in 1993, which indicated "its disapproval of private persons using deadly force when arresting or attempting the arrest of a person suspected of a felony." *Id.* at 991.

Twelve years later, and approximately three months before Newell's trial, the Nevada Supreme Court, in *Davis*, reversed a decision by the state district court rejecting the defense's justifiable battery instructions because, according to the Nevada Supreme Court, "NRS 200.275 unequivocally provides that battery is justifiable in self-defense under the same conditions that would justify homicide." *Davis*, 321 P.3d at 875. The Nevada Supreme Court explained that the state district court refused to give the defense's

---

[2]NRS § 200.160(3) provided that homicide is justifiable if it has been committed "[b]y any person, when committed upon the person of another who is engaged in the commission of a felony or an attempted felony, or who after the commission or attempted commission of any such felony is fleeing from the premises or resisting lawful pursuit and arrest."

justifiable battery instructions because "while the proposed instructions were consistent with Nevada's justifiable homicide statutes, the statutes were overbroad and did not reflect the true state of the law because deadly force is not justifiable when exercised to prevent nonviolent felonies." *Id.* at 873. Although, relevantly, the Nevada Supreme Court noted that the plain language of NRS § 200.120(1), § 200.150, § 200.160, and § 200.275 do "not differentiate between the types of felonies from which a person may defend himself," it explained that the state district court's reasoning in rejecting the defense's instruction was incorrect because "this case does not present the question of whether battery is justifiable when used to defend against a nonviolent felony." *Id.* Rather, in *Davis*, the defendant argued that the victim intended to commit "some great personal injury" against him. *Id.* at 873. The Nevada Supreme Court then explained that the defense's proposed instructions were "legally correct and in accord with current statutes" because "justifiable battery is . . . battery [that] is necessary for self-defense against one who manifestly intends to commit a felony by using violence or surprise, or when there is reasonable ground to apprehend a design on the part of the person injured to do some great personal injury to the person inflicting the injury." *Id.* at 873–74.

Here, the state district court appears to have been correct when it commented that "*Davis* and *Weddell* [are] two cases that are not saying the same thing." (ECF No. 22-2 at 17.) However, that does not lead to a conclusion that the Nevada Supreme Court's extension of *Weddell* to NRS § 200.160 was unexpected, indefensible, or unforeseeable. *Bouie*, 378 U.S. at 350, 354–55. Like *Bouie*, the Nevada Supreme Court's interpretation was at odds with the statute's plain language. Indeed, as the Nevada Supreme Court noted in Newell's direct appeal, NRS § 200.160 and NRS § 200.275 appear to justify any battery committed in reasonable apprehension of, or in resistance of an attempt to commit, any felony, whether violent or nonviolent, regardless of the amount of force used or whether the person battered poses a threat of serious bodily injury. However, unlike *Bouie*, the Nevada Supreme Court's interpretation was supported by a prior judicial decision in *Weddell*.

Although *Weddell* dealt with deadly force in a citizen's arrest, it was not unexpected or unforeseeable that the Nevada Supreme Court's reasoning and holding[3] in *Weddell* could be applied to Newell's case. In *Weddell*, the Nevada Supreme Court explained that at common law, deadly force used to apprehend a felon was permitted since common law felonies were serious and violent, which is not the case in present day. *Weddell*, 43 P.3d at 990. Similarly, here, the common law allowance of deadly force in defense of any type of felony could be found to be outdated considering the types of cases that amount to felonies in current society. Further, in *Weddell*, the Nevada Supreme Court explained that the Nevada legislature's repeal of NRS § 200.160(3) indicated "its disapproval of private persons using deadly force when arresting or attempting the arrest of a person suspected of a felony." *Id.* at 991. The Nevada legislature's disapproval of deadly force in a citizen's arrest could be found to extend to the deadly force permitted by other parts of NRS § 200.160 as well.

Turning to Newell's argument that his due process rights were violated by the Nevada Supreme Court's extension of *Weddell* to NRS § 200.160 in light of *Davis*, the United States Supreme Court has explained that it "has never found a due process violation . . . where a state supreme court, squarely addressing a particular issue for the first time, rejected a consistent line of lower court decisions based on the supreme court's reasonable interpretation of the language of a controlling statute." *Metrish v. Lancaster*, 569 U.S. 351, 367 (2013). Importantly, in *Davis*, unlike the facts in Newell's case, the issue was not "whether battery [was] justifiable when used to defend against a nonviolent felony." *Davis*, 321 P.3d at 873. Therefore, the Nevada Supreme Court had not previously

---

[3]The relevant holding in *Weddell* mirrors the Nevada Supreme Court's holding in Newell's direct appeal. *Compare Weddell*, 43 P.3d at 988 (holding "that a private person, when arresting another person . . . may use no more force than is necessary and reasonable to secure the arrest" and that "deadly force is, as a matter of law, unreasonable, unless the deadly force is used in defense of self or others against a threat of serious bodily injury"), *with* ECF No. 23-6 at 9 (holding "the amount of force used in a battery must . . . be reasonable and necessary in order to be justified, and deadly force cannot be used unless the person battered poses a threat of serious bodily injury to the slayer or others").

"squarely address[ed the] particular issue" in Newell's direct appeal.[4] *Metrish*, 569 U.S. at 367.

In *Davis*, the Nevada Supreme Court noted that the plain language of NRS § 200.160 "does not differentiate between the types of felonies from which a person may defend himself." *Davis*, 321 P.3d at 873. In Newell's direct appeal, the Nevada Supreme Court explained that interpreting NRS § 200.160 by its plain meaning, which would "justify any battery committed in reasonable apprehension of *any* felony or in resistance of an attempt to commit *any* felony, regardless of the amount of force used or whether the person battered poses a threat of serious bodily injury," would be "unreasonable and absurd." (ECF No. 23-6 at 6 (emphases in original).) It does not appear that the Nevada Supreme Court, in its opinion in Newell's direct appeal, was rejecting its prior notation in *Davis*; rather, it appears that it was simply further analyzing the plain reading NRS § 200.160 in a case where further analysis was warranted. However, even if the Nevada Supreme Court in Newell's direct appeal did reject its prior notation in *Davis*, this rejection was based on the Nevada Supreme Court's reasonable interpretation of NRS § 200.160, and, as such, did not violate Newell's right to due process. *Metrish*, 569 U.S. at 367.

In sum, this Court concludes that the Nevada Supreme Court's extension of *Weddell* to NRS § 200.160—even considering its later decision in *Davis*—was not unexpected, indefensible, or unforeseeable; accordingly, Newell's due process rights were not violated. Because the Court determines that fairminded jurists would agree that this reasoning establishing that Newell's federal constitutional rights were not violated was not inconsistent with prior decisions of the United States Supreme Court, Newell is not entitled to relief.[5] *See Harrington*, 562 U.S. at 102.

---

[4] The Nevada Supreme Court defined the issue in Newell's direct appeal as "whether there is any limitation as to the use of deadly force in response to the commission of a felony under NRS 200.160." (ECF No. 23-6 at 3.)

[5] Newell requested an evidentiary hearing in his reply brief. (*See* ECF No. 55 at 4.) However, Newell also filed a motion for an evidentiary hearing (ECF No. 56), which this Court denied (ECF No. 61). This Court declines to revisit this issue.

## V.  CERTIFICATE OF APPEALABILITY

This is a final order adverse to Newell. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). Applying this standard, the Court finds that a certificate of appealability is unwarranted.

## VI.  CONCLUSION

It is therefore ordered that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 6) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 15th day of April 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE